WATERS, Executor, etc., v. HATCH et al.; FRANK B. HATCH, Appellant.

Division One, March 29, 1904.

1. **WILL:** Adeemed Bequest: Undelivered Note. Where a bequest of a note is given to a legatee by the testator, and that note is after his death found among his papers endorsed by him to such legatee, it can not be said to have been adeemed, for the reason that it was not delivered to the legatee by him.

2. ————: Specific Bequest. Where the will separates certain shares of bank stocks from the rest of the estate, and gives them to a certain legatee, the bequest is a specific legacy.

3. ————: Mistake: Misdescription of Property: Intention. A testator owned sixty shares of stock and gave them to a daughter, and by a subsequent clause he gave to another daughter twenty shares of stock in the same bank, although he only owned sixty shares in that bank, but did own twenty shares in another bank. The will plainly indicates that he intended to dispose of all his property and that he did not contemplate that these twenty shares should fall into the residuum of his

estate, because he had given that to his wife, and for her he had specifically provided. *Held*, that the court properly held that the testator meant to give to the second daughter the twenty shares of stock he owned in the other bank, and not something he did not own. This was the intention of the will, though not its letter.

4. ———: **Specific Legacy: Excess.** A testator estimated in the will that certain insurance policies would yield his estate $4,000, and directed how that sum should be distributed, the last item being, "the balance, $100" to his son. But the policies, because of a subsequent payment of a premium of $100 after the will was made and before testator's death, and of certain earnings of the company, yielded $190 in excess of the $4,000. *Held* that this $190 was not a specific bequest to the son, since no part of it was in existence at the time the will was made, and was not in the contemplation of the testator at that time, and hence was not a part of a specific thing which he was separating from the balance of his estate and disposing of specifically.

Appeal from Jasper Circuit Court.—*Hon. Hugh Dabbs,* Judge.

MODIFIED AND AFFIRMED.

*Shannon & Shannon* for appellant.

(1) "All courts shall have due regard to the directions of the will, and the true intent and meaning of the testator." R. S. 1899, sec. 4650. (2) This was the common law rule, incorporated into our statutes, and is subject to the limitation that, unless there is an ambiguity, the intention must be determined from the will itself. Webb v. Archibald, 128 Mo. 308; Schorr v. Carter, 120 Mo. 413; Thomas v. Thomas, 149 Mo. 435. (3) The instrument itself, like other instruments, is to be interpreted according to the rules of law. Harrison v. Swan, 58 Mo. 153; Varnon v. Varnon, 67 Mo. App. 534. (4) The balance of the funds derived from banker's life insurance policy, after payment of other legacies, was given to appellant, and was specific. Towle v. Swasey, 106 Mass. 100; 13 Am. and Eng. Enc.

Law (1 Ed.), pp. 12, 15, 18, 24, 26.   (5)   The bequests of sixty shares of the stock of the Carthage National Bank to Mrs. S. M. Vernon and of twenty shares of the stock of the same bank to Mrs. Mary E. Flower, are general legacies and subject to abatement for the payment of debts, before the specific devises and bequests can be abated for such purpose.   Sponsler's Appeal, 107 Pa. St. 95; Tifft v. Porter, 8 N. Y. 516; Frank v. Frank, 71 Iowa 646; Osborne v. McAlpine, 4 Redf. (N. Y.) 1.   (6)   Reference to the following cases show that the doctrine recognized by the cases last above cited is general: Avelyn v. Ward, 1 Ves. Sr. 425; Sleech v. Thorington, 2 Ves. Sr. 560; McDonald v. Irvine, 8 Ch. Div. 101; Purse v. Snaplin, 1 Atk. 414; Wilson v. Brownsmith, 9 Ves. 180; Atty.-Gen. v. Grote, 2 Russ. & M. 699; Peterborough v. Mortlock, 1 Bro. C. C. 565; Johnson v. Johnson, 14 Sim. 313, 8 Jur. 1038; Rogers v. Clark, C. P. Cooper 376; Mullins v. Smith, 1 Dr. & Sm. 204; Bumpass v. Bumpass, 29 L. T. 800; In re Gray, L. R. 36 Ch. D. 205, 57 L. T. 132; Burke v. Doyle (1897), 1 Ir. 479; Gilmer v. Gilmer, 42 Ala. 9; Evans v. Hunter, 86 Iowa 413; Dryden v. Owings, 49 Md. 356; Kunkel v. MacGill, 56 Md. 120; Johnson v. Gross, 128 Mass. 433; Morris v. Thompson, 16 N. J. Eq. 218; Blundell v. Pope, 21 Atl. 456; Holt v. Jex, 48 Hun 528; Re Newman, 4 Den. (N. Y.) 65; Re Hadden's Will, 9 N. Y. 453; Perry v. Maxwell, 2 Dev. Eq. 488; Eckfeldt's Estate, 13 Phila. 202; Pearce v. Billings, 10 R. I. 102; Capron v. Capron, 6 Mackey 340.   (7)   The estate created by a will is not to be cut down by a subsequent clause, unless such subsequent clause clearly and decisively cuts down such estate. Roberts v. Crume, 73 S. W. 662; Roth v. Rauschenbusch, 73 S. W. 664; Underwood v. Cave, 75 S. W. 451.   (8)   The evidence in relation to the three notes should be considered and is sufficient to show a gift of them to Cordelia Hatch, and a consequent ademption of the legacy of the $500 to Mrs. Vernon.   14 Am. and Eng. Enc. Law (2 Ed.),

p. 1019; Schooler v. Schooler, 18 Mo. App. 69; Nasse
v. Thurman, 39 Mo. App. 178; 13 Am. and Eng. Enc.
Law (1 Ed.), p. 72.   (9)   A declaration by an alleged
donor of an intent to give and a subsequent possession
by the donee of the property intended to be given, are
sufficient to authorize the presumption that the gift was
actually made, and the subsequent possession of the
donor, especially where the donor is the husband of
donee, is not necessarily incompatible with the donee's
dominion over the property, and will not divest the
donee of title to the property.   14 Am. and Eng. Enc.
Law (2 Ed.), pp. 1026 and 1051.

*Thomas & Hackney* for defendant Flower.

It clearly appears from the language of the will
that the testator has provided that Frank Hatch pay to
the widow, monthly, a legacy of $30 per month in ad-
vance, which is made a lien and charge on the business
lot where the Boston Clothing store stood; that he was
to pay to the widow a legacy of $25 per month in ad-
vance, which is made a charge on the dwelling house
and lot.   These two legacies to the widow, under every
authority, are cumulative.   The amount is different and
the properties are different upon which each is made a
charge.   The two legacies of $200 per year to Mrs.
Flower are cumulative.   The one is not a repetition of
the other, nor a substitution of one for the other.   It
is true the two legacies are of equal amounts, but it is
apparent from the will that one is not given as a sub-
stitute for the other.   The first legacy mentioned in the
will to be paid by Frank Hatch to his sister, Mrs.
Flower, is made a charge on the business property, and
it is provided that in case it be found necessary to sell
the property, then the annuity shall cease and a provis-
ion in lieu thereof for Mrs. Flower is provided, to-wit,
one-half of the proceeds of the sale of the business prop-
erty.   The second legacy of $200 per year provided for

Mrs. Flower is made a charge on the dwelling house and lot and is not to commence until the death of the widow, showing clearly that the testator intended to charge Frank Hatch with the annuity to his sister of $200 a year on account of the devise of the store property to him. The other clause in the will provided that his daughter, Mrs. Flower, should have an endowment, or life dower, of $200 a year on the dwelling house and lot, and that Frank should pay the same after the death of his mother, during the life of Mrs. Flower, she to pay one-half of the cost of repairs only; indicating that the testator intended to charge Frank with the duty of paying this annuity of $200 a year on account of the devise to him of the dwelling house. These two legacies are cumulative. Jones v. Creveling, 19 'N. J. L. 127; 13 Am. and Eng. Enc. Law (1 Ed.), 54. These two legacies left to Mrs. Flower are chargeable on different properties. Neither is to be paid out of the estate. Neither of them is to be paid by the executor. The first annuity provided for in the will is made a charge on the business property and is to be paid by Frank Hatch. The testator then had in his mind a division of the business property between his son Frank and his daughter Mary E. Flower, and it was his intention that Frank should have the whole of the title to the real estate and in consideration of the title, he should pay his sister, Mary E. Flower, $200 a year during her life, after the death of his mother, unless that particular property was sold, when the annuity should cease, and she should have one-half of the proceeds; indicating that he was attempting to divide the property as nearly equal between his son, Frank, and his daughter, Mary E. Flower, as possible. We can not find upon the face of this will, nor in the circumstances of the case any evidence that the testator did not intend to give Mrs. Flower both sums, and if one of them is rejected, the evident intent of the testator will be denied. It is evident that the testator intended to du-

plicate the annuities and make them cumulative because
each is charged on a different fund, that is, on different
properties, and requires Frank Hatch to pay each dif-
ferent legacy on the ground of receiving the two sep-
arate tracts of property, directly negativing the rule
that where two legacies are of equal amounts and pay-
able at the same time out of the same fund, the last
named will be deemed to be a subtitution of the former.
There is no ground in this case for the operation of such
a rule.   The intention of the testator must be learned
from the language he uses in the will, giving it its usual
and ordinary acceptation.   Ringwist v. Young, 112 Mo.
25.   In construing an instrument, all its parts are, if
possible, to be given effect and none perish by construc-
tion.   Each will is to a great extent its own interpreter.
Mersman v. Mersman, 136 Mo. 244; Schorr v. Carter,
120 Mo. 409; Peters v. Carr, 16 Mo. 54; 2 Woerner's
Administration, 415.   When two parts of a will are
seemingly inconsistent, if both may stand, they should
be allowed to do so.   Varnon v. Varnon, 67 Mo. App.
534; Jones v. Doe, 2 Ill. 276; Dawes v. Swan, 4 Mass.
208.   Where there is an express disposition, though it
may be the result of oversight or mistake on the part
of the testator, it can not be controlled by inference
which is not necessary and indubitable.   Harrison v.
Haskins, 2 Patt. & H. (Virginia) 388.

*E. O. Brown* and *G. W. Crowder* for defendant
Vernon.

(1)  After paying the specific legacies charged upon
the Bankers' Life Insurance fund, by the fifth clause
of the will, viz., $500 to Mrs. Hatch, $500 to Mrs. Ver-
non, $500 to Mrs. Flower, and $100 to the appellant,
Frank Hatch, there was a surplus of $190, which ap-
pellant strenuously contends belonged to him.   The
court below, however, thought otherwise and held under
the authority of the concluding portion of paragraph 5,

which provides, "It is my will that a lot be selected in the cemetery, and a monument erected to cost, not exceeding $300, the same to be paid for from the life insurance fund. If there is not enough in this fund, then from the surplus of any other fund," that the surplus in question should be applied by the executor to the payment of the lot in the cemetery. This, we think, was a proper construction of the will. Appellant places considerable reliance on these words in the fifth clause of the will, viz., "I give my son Frank Hatch, the bal., $100." These words, it is urged, contain a specific bequest to apellant of the surplus remainder after paying the other legacies therein provided for. But it must be remembered that in disposing of the fund derived from the Bankers' Life Insurance policy, the testator merely undertook to approximate the aggregate amount which might be realized from this source, and evidently made his calculations on the assumption that the policy would be paid in full, and that it would require $2,400 of the amount so realized to pay the note of Hatch & Son held by the Carthage National Bank, but it seems that appellant made a payment of $100 on this note shortly before the testator's death, thereby leaving a balance of only $2,309.55. The executor, however, realized only $4,100, thus leaving a surplus, not specifically devised, of $190, which, under the concluding portion of paragraph 5, was clearly intended by the testator to be applied on the payment of the lot in the cemetery. Any other construction of the will would do violence to the manifest intention of the testator, as gathered from the whole will. To support appellant's contention it would be necessary to ignore the situation of the parties and the calculation so made by the testator, and his unmistakable purpose to keep the bequests charged upon the insurance fund within the approximate amount to be realized therefrom. This is made perfectly clear by reference to paragraph 5 in which the testator in clear and explicit language charges

the surplus of the fund with the payment of lot in cemetery. (2) Appellant's contention is, that the court erred in finding that the bequest of sixty shares of stock to Mrs. Vernon was specific, and that the bequest of twenty shares of stock in the Carthage National Bank to Mrs. Flower should be construed as twenty shares in the Central National Bank, instead. If it appears from the context, as in this case, that the testator meant to bequeath the identical bank stock he possessed at the date of the will, such manifest intention will render the legacy specific, although he has not expressly declared such intention, not expressly referred to the stock. So where, as here, the testator is possessed of bank stock at the date of the will, disposes of the same in fractional parts, and in giving one of these parts, adopts such expressions of reference as to raise a clear inference that he intended the identical stock he then possessed, then all the legacies are specific. 13 Am. and Eng. Ency. Law (1 Ed.), p. 19. And the manifest intention properly gathered from the context will govern as against express words. Clotilde v. Lutz, 157 Mo. 445; Records v. Fields, 155 Mo. 314; Lewis v. Pitman, 101 Mo. 92.

*Howard Gray* for respondent.

MARSHALL, J.—This is an application, in equity, by the executor of the last will and testament of W. H. Hatch, deceased, for a construction of the will. The widow and children of the deceased, who are also the legatees under the will, are the parties defendant. The will made no specific provision for the payment of debts, and the principal question involved is whether the demonstrative, the specific or the general legacies, one or all, should contribute ratably to the payment of the debts and the expenses of adminstration. There are other questions of construction of the will which

affect certain legacies and provisions of the will which will be noted in the course of the opinion.

The case made is this:

W. H. Hatch lived in Carthage, Missouri. His family consisted of his wife, who was over seventy years of age, his son, Frank B. Hatch, who was of age, and his two married daughters, Sarah M. Vernon and Mary E. Flower. He owned a homestead known as lot 26 of Lamb's addition, worth $7,000, and of a rental value of $40 per month, and also a brick store building, worth $10,000, located on a portion of lot 24, in Carthage, on the north side of the square, wherein he carried on a clothing business, under the name of the Boston Clothing Store. He also owned another business which he carried on under the name of Economy Clothing Store, worth some $3,500. He owned sixty shares of the capital stock of the Carthage National Bank, and twenty shares of the capital stock of the Central National Bank. Besides this, he had insurance policies aggregating some eight thousand dollars. He employed his means separately in his several business ventures, and when he used money for any business that had not been set apart thereto, he executed notes in the name under which he carried on the business to himself therefor. When he died he had on hand about $316.50 in cash, and when the business of the Boston Clothing Store was wound up by the executor, it left $2,651.10 in the executor's hands, and these sums, together with $190 excess resulting from a policy of insurance for $4,000 in the Banker's Life Insurance Company, after paying $2,400 to the bank which he owed as the Boston Clothing Store, and after paying $1,600 specific legacies directed to be paid out of that fund, seem to have constituted the assets available to the payment of the debts and expenses of administration, without any deduction from the legacies for that purpose. The record does not show how much the debts of the estate amounted to, but all parties assume that said available fund is

not sufficient to pay the debts, and that some or all of the legacies will have to contribute thereto, and the case will be so treated here.

For several months prior to April 13, 1898, W. H. Hatch was engaged in preparing his own will. The evidence is that he wrote and rewrote it very often. Finally on the day aforesaid he completed and executed his will, which is as follows:

"Know all men by these presents, That I, William H. Hatch, of the city of Carthage, and State of Missouri, do make this my last will and testament, revoking all others.

"1.   I give my beloved wife, Cordelia Hatch, our house and lot, it being known as lot twenty-six, in Lamb's addition to the town, now city of Carthage, except five feet off the north side of said lot, during her natural life, also the furniture, carpets, books, beds and bedding and everything to them belonging during her natural life.   Our daughter, Mrs. Sarah M. Vernon, of Des Moines, Iowa, is to have the use of one bedroom furnished, with the choice of selection and use of the house for herself only, as long as she shall wish it for herself, but not rent or lease it to others.

"I also give and bequeath to my widow, Cordelia Hatch, a life dower of thirty dollars per month on the brick store building where the Boston Clothing Store now is, it being known and described as the undivided west half of the south half of lot twenty-four in the city of Carthage, on the north side of the square, during her natural life.   My widow, Cordelia Hatch, shall pay the taxes and insurance on the house and lot, and my son, Frank B. Hatch, shall pay the taxes and insurance on the store building and lot, and all repairs that are necessary shall be paid equally by both parties, each paying one-half the expenses of repairs.   I also give and bequeath to my widow fifty dollars per month from the sales of the Boston Clothing Store from the date of my death until

the Boston Store is sold, to be paid to her at the end of each month.   The insurance must be kept up both on house and store buildings.

"2.   I give and  bequeath to my daughter, Mrs. Sarah M. Vernon, of Des Moines, Iowa, sixty shares of stock of the Carthage National Bank of Carthage, Missouri.

"3.   I give and bequeath to my daughter, Mrs. Mary E. Flower, twenty shares of the stock of the Carthage National Bank, of Carthage, Misouri.   I also give and bequeath to my daughter, Mrs. Mary E. Flower, a life endowment or dower of two hundred dollars each year during the rest of her natural life to be paid to her by her brother Frank B. Hatch, to be paid to her quarterly on the first of each quarter on the brick store building where the Boston Clothing Store now is, it being known and described as the undivided south half of the west half of lot twenty-four in Carthage, Missouri, on the north side of the square.   This endowment or dower is not to be paid to my daughter Mary until after the death of her mother, Cordelia Hatch, as there will be repairs to be made and some improvements from year to year.   I will that each party shall pay one-half of the expenses of repairs; my son, Frank B. Hatch is to pay the taxes and insurance on the property.   If it should ever be necessary to sell the property and both parties are agreed to it and it will seem best to do so, it may be sold and the proceeds of the sale shall be equally divided among them, my daughter and son.

"4.   I give and bequeath to my son, Frank B. Hatch, our house and lot, it being known and described as lot twenty-six in Lamb's addition to the town, now city, of Carthage, Missouri.   Be it known and understood that my widow, Mrs. Cordelia Hatch, has a life dower in this property during her natural life, and it is her property to occupy or to rent and control as she thinks best during her natural life.   She is to pay all taxes and keep it insured in good and reliable insurance

companies, all necessary repairs to be paid by her and son Frank, each one their one-half of the expense.

"I give and bequeath to my son, Frank B. Hatch, my share of the lot building where the Boston Clothing Store now is, it being known and described as the undivided south half of the west half of lot 24 in Carthage, Missouri.

"Note:— Our Dwelling House
I wish to add that my daughter, Mrs. Sarah M. Vernon, is to have one bedroom in our house of her own selection, furnished, and the privilege of house as long as she lives, but she is not to lease or sell it to anyone.

"My son Frank is to pay all taxes and keep the property insured in good and reliable insurance companies. Be it known that my widow, Cordelia Hatch, has a life dower in this property during her natural life of twenty-five dollars per month during her natural life, which my son Frank will pay her on the first of every month. After the decease of my widow, my daughter, Mrs. Mary E. Flower, will have a life dower in this property, of two hundred dollars per year, which my son, Frank B. Hatch, will pay her $50 quarterly during her natural life. My son, Frank, will pay all taxes and insurance on the property and one-half of the expenses of repairs; all taxes must be paid before they become delinquent by my son Frank. I further give to my son, Frank B. Hatch, my interest in the Economy Clothing Store, which is some over one-half, also all the notes and book accounts belonging to the Economy Clothing Store. The Economy Clothing Store owes the Carthage National Bank about twenty-four hundred dollars. I do make provisions for the payment of our notes in the Carthage National Bank with my life insurance money, and my son Frank B. Hatch, must pay

all other debts and claims against the firm of W. H. Hatch & Son. The amount of the notes is twenty-four hundred dollars, or about that amount.

### "LIFE INSURANCE.

"5. I hold two certificates in the Banker's Life Insurance Company of Des Moines, Iowa, of two thousand dollars each. It is my will that as soon as the insurance company pays the money that the notes of W. H. Hatch & Son, in the Carthage National Bank, amounting to about the sum of $2,400 shall be paid first amounting to

| | |
|---|---|
| I give to my widow.........................$ | 500.00 |
| I give to my daughter Mrs. Vernon......... | 500.00 |
| I give to my daughter Mrs. Flower......... | 500.00 |
| I give to my son Frank Hatch, the bal....... | 100.00 |
| | $4,000.00 |

"As the Banker's Life Insurance Company usually pays its loss within thirty days it is my will that as soon as the money comes the notes be paid and my widow and daughters be paid at once without delay.

### "LIFE INSURANCE.

"I hold two certificates of Hartford Life Insurance Co., of Hartford, Ct., $1,000 each, $2,000. It is my will that as soon as the money is received, the following persons be paid:

| | |
|---|---|
| To my granddaughter, Halla C. Vernon......$ | 500.00 |
| To my granddaughter, Maze Vernon, of Des Moines, Iowa ............... .......... | 500.00 |
| To my grandson, H. Russell Hatch.......... | 100.00 |
| To my grandson, Vivian Hatch............. | 100.00 |
| To my granddaughter, E. G. Hatch.......... | 100.00 |
| To Mrs. Clara C. Dix, of Wellington........ | 300.00 |
| To Mrs. Harriet E. Hanes, of Mt. Vernon, Ohio ........ ......... ......... ...... | 100.00 |
| | $1,000.00 |

"The above insurance will be paid in ninety days and is perfectly reliable.

### "LIFE INSURANCE.

"I hold two certificates of life insurance of one thousand dollars each in the Equitable Mutual Life Association of Waterloo, Iowa, $2,000. I give and bequeath to the following persons.

| | |
|---|---|
| To Mrs. Anna M. Anderson of Rich Hill, Missouri.................................$ | 200.00 |
| To Antoinette Choate of St. Paul, Minn., niece | 100.00 |
| To A. M. Choate, of Minneapolis, Minn., niece | 100.00 |
| To Lillieore T. Billings, Cambridge, Mass., cousin.................................... | 100.00 |
| To Lillie R. Frisselle, cousin, of Omaha, Nebraska.................................... | 100.00 |
| To Isaac Entwistle.................................... | 100.00 |
| To Rebecca Entwistle, of Carthage, Mo...... | 100.00 |
| To C. F. Hodson.................................... | 100.00 |
| To Charles L. Stiffler, of Carthage, Mo...... | 100.00 |
| To Eugene Milton, of Carthage, Mo......... | 100.00 |

"I am not sure that this company will pay in full so I will not make any more bequests. If paid in full it will go to my estate. It is my will that a lot be selected in the cemetery and a monument erected to cost not to exceed three hundred dollars. The same to be paid for from the Life Insurance Fund. If there is not enough in that fund, then from any other fund from the surplus of any other fund. The erection of a monument be deferred for a time. The first expense to be paid is the funeral expense, that will be paid by money due me on my notes in the safe at this time. My bookkeeper, Mr. C. F. Hodson, will pay the funeral expenses.

"6. The Boston store will and does owe for bills of goods lately purchased which Mr. C. F. Hodson will pay as fast as he can raise the money from the sales of goods

and collections. The Boston Clothing Store is owing at this time as follows: To C. F. Hodson, five hundred dollars for borrowed money at 8 per cent. W. H Hatch, five hundred dollars, borrowed money that was loaned to the store to pay bills. It is my will that C. F. Hodson and Mr. Chas. L. Stiffler be retained to carry on the business of the store from three to six months as they are familiar with my manner of doing business and are competent and honest. It is my will that the bills for goods bought the store, be paid for first, after that the note that Mr. C. F. Hodson paid holds, after that the note that the store owes me for money lent the store (my private fund). After the bills for goods are all paid and the two notes of $500 each, then I want an invoice taken of the stock of goods, good notes and all good accounts. After that the stock of goods will be offered for sale to the highest and best bidder with the promise that all bids will be rejected if not accepted or satisfactory. The stock of goods ought to bring eighty-five cents on the dollar and not to be sold for less than seventy-five cents on the dollar the good notes and accounts for fifty cents on the dollar and the store furniture for one-half of what it was invoiced at last time. If there are no bids that are satisfactory reject them. Then would advise my son, Frank B. Hatch, to take the stock at or above the best bid offered. When the stock is all sold it will be divided as follows: My son, Frank B. Hatch, shall have as his share, five hundred dollars. My widow, Cordelia Hatch, one-third of the sale of the stock. My daughter, Mrs. S. M. Vernon, one third, and my daughter, Mrs. Mary E. Flower, one-third of the amount of the stock. It will be best to take out the amount to my son Frank first, then each of the others will have one-third each. I think the stock of goods should be sold separate from the notes and accounts. It is my wish that Mr. C. F. Hodson and Chas. L. Stiffler be retained until the sale is completed and also Mr. Eugene Milton as long as his services will be required.

It is my judgment that there should not be any more goods bought unless a very few staple goods to help sell the stock. I think Mr. Hodson and Mr. Stiffler will be willing to stay on the same terms and conditions as at present. It is my wish and desire that Mr. W. H. Waters act as executor of my will and my son F. B. Hatch assistant, if the court will so order.

"ADDITIONAL BEQUESTS.

"1.   I give and bequeath to my widow, Cordelia Hatch, as follows

    1 note of S. E. Locke for............ :.$   200.00

    1 note of J. H. Magee for.............   261.00

    31 acres of land 3 1-2 miles from Galena,

        Kansas, $10.... ...... ...... ......310.00

"Provided none or all of them are not sold before my decease. "Note.   Mr. S. E. Locke gave me as collateral security shares of stock on a developing company in Wyoming Irrigation Company.   When he pays his note the shares of stock will be returned to him.   Of Lodge   I also give to my widow, Cordelia
197      Hatch, 5 bonds of ten dollars each, $50
      of A. F. & A. Masons in Carthage, Mo.

    Also, 1 Phaeton carriage...............   25.00

    Also my watch and chain and charm....   30.00

"2.   I give to my daughter Mrs. S. Vernon, a note of five hundred dollars on the Boston Clothing Store for personal money I lent the store (which is mentioned in a former part of this will) which will be paid by the Boston Clothing Store.

"3.   I give to my daughter Mrs. Mary E. Flower, our piano I value at $200, also a note on Byron Morgan, principal and interest $500, provided it is not paid before my decease. The note is secured by a deed of trust on real estate.

"As my daughter Mrs. S. M. Vernon, my two granddaughters will want to attend my funeral I will set apart from the Boston Clothing Store, one hundred dollars which will be paid to them before they return home.

"After paying all bills against my estate and all bequests, then if there is any surplus it shall be divided equally with my widow and our three children.

"If there shall be any item of property not mentioned in this will it shall be given to my widow Cordelia.

"This will written on thirteen pages of paper, is written by myself and will be signed by myself and Mr. C. F. Hodson and Chas. L. Stiffler as witnesses. This 13th day of April, 1898.

"C. F. Hodson,
"Chas. L. Stiffler,
"William H. Hatch.
'Carthage, Missouri.''

Thereafter in June, 1899, he died and his will was admitted to probate.

Among the papers of the deceased the executor found three notes made by Boston Clothing Store to testator for $500, $551.63 and $460 respectively, and which were indorsed by him to his wife, Cordelia, but the evidence does not show that they were ever delivered to her.

The two daughters, Mrs. Vernon and Mrs. Flower, claim that the legacies to them are specific and should not contribute to the payment of the debts until after the available assets, the residuum of the estate, and the general and demonstrative legacies have first been exhausted. They further claim that the devise of twenty shares of the capital stock of the Carthage National Bank to Mrs. Flower is a palpable error of the scrivener, and that the twenty shares that the testator owned

of the stock of the Central National Bank was manifestly intended.

The widow and the son controvert these contentions, and claim that the legacies to them are specific and should not contribute to the payment of the debts; that Frank is entitled to the excess of $190 resulting from the $4,000 policy in the Banker's Life Insurance Co. after the payment of the $2,400 to the bank and the payment of the specific legacies provided to be paid out of that fund; that he is entitled to the homestead subject only to the life estate of his mother and the right of Mrs. Vernon to occupy one room therein; that he is entitled to one-half of the store building, subject to a rent charge thereon in favor of Mrs. Flower, for two hundred dollars, after the death of their mother; that Mrs. Flower is not entitled to an annuity charge on the homestead for $200; that the sixty shares of stock devised to Mrs. Vernon, and the twenty shares devised to Mrs. Flower, are general legacies, and as such should be first resorted to to pay the debts; that the bequest of $500 to Mrs. Flower, by the second clause of the will, has been adeemed by the testator giving the same to his wife during his lifetime.

The chancellor heard the cause, construed the will and entered the following decree:

"It is ordered adjudged and decreed by the court that the will of W. H. Hatch, deceased, be and is hereby construed and interpreted as follows:

"The following legacies and devises contained in said will in favor of the defendant, Cordelia Hatch, are construed and declared to be specific devises.

"First. The house and lot known as lot twenty-six, Lamb's addition to Carthage, except five feet off the north side of said lot, to be enjoyed by her during her natural life; also the furniture, carpets, beds and bedding and everything to them belonging in said dwelling house during her natural life.

"Second. The life dower, or rent charge of thirty dollars per month on the brick store building being known and described as the undivided one-half of the west half of the south half of lot twenty-four in the original town, now city of Carthage, and also that she is entitled to a life dower, or rent charge of twenty-five dollars per month during her natural life on the dwelling house above described, each of said rent charges to be paid by the defendant, Frank B. Hatch, on the first of every month.

"Third. One-third of the amount of the proceeds of the sale of the Boston Clothing Store, described in said will, after the payment of the debts thereof, and five hundred dollars to the defendant, Frank B. Hatch.

"Fourth. Note of S. R. Lock for two hundred dollars.

"Fifth. Note of J. W. McGee for two hundred and sixty-one dollars.

"Sixth. Thirty-one acres of land near Galena, Kansas, described in said last will and testament of W. H. Hatch, deceased.

"Seventh. Watch, chain and charm therein described.

"Eighth. Five bonds of $10 each (fifty dollars) of A. F. & A. Masons, in Carthage, Mo.

"Ninth. One phaeton carriage, twenty-five dollars.

"The following legacies and devises contained in said will in favor of defendant, Frank B. Hatch, are construed and adjudged to be specific legacies and devises, to-wit:

"The house and lot known as lot twenty-six, Lamb's addition to Carthage, except five feet off the north side, subject to life estate of defendant, Cordelia Hatch, and dower and rent charge in her favor, above described, and subject also to life dower or rent charge in favor of the defendant, Mary E. Flower, of two hundred dollars per year, to be paid by Frank B.

Hatch, $50 quarterly, during the life of Mary E. Flower, said dower or rent charge to begin at the death of defendant, Cordelia Hatch.

"Second.   The undivided one-half of the west half of the south half of lot twenty-four in the original town, now city of Carthage, Missouri, subject to the charge of thirty dollars per month to the defendant, Cordelia Hatch, during her life, but subject also to a charge of two hundred dollars per year during her natural life to defendant, Mary E. Flower, after the death of defendant, Cordelia Hatch.

"Third.   The interest of the testator in the Economy Clothing Store and all notes and accounts belonging to the same.

"The following bequests and legacies in favor of the defendant, Mary E. Flower, and the defendant, Sarah M. Vernon, are construed to be specific:

"First.   Note of five hundred dollars of the Boston Clothing House, devised to defendant, Sarah M. Vernon.

"Second.   Piano and note of five hundred dollars made by Byron Morgan, devised to defendant, Mary E. Flower; annuity of two hundred dollars to defendant, Mary E. Flower, on the brick store building known and described as the undivided half of the west half of the south half of lot 24 in the original town (now city) of Carthage, on the north side of the square, to commence at the death of Cordelia Hatch, and a life annuity or rent charge of two hundred dollars per year, payable in quarterly installments, and to commence at the death of Cordelia Hatch, on the dwelling house described as lot twenty-six in Lamb's addition to the city of Carthage, except five feet off the north side thereof.   Also the devise and bequest of sixty shares of stock in the Carthage National Bank.

"And the court further finds that at the time of making the will and at the time of the death of the testator, that he owned but sixty (60) shares of stock in the Carthage National Bank, but did own twenty

shares in Central National Bank of Carthage, and the court finds that said testator intended by said will to bequeath to Sarah M. Vernon the sixty shares of stock in the Carthage National Bank, and to Mary E. Flower twenty shares of stock in the Central National Bank of Carthage, and the court finds that said bank stock bequeathed to Mary E. Flower was erroneously described as the stock of the Carthage National Bank. The court further construes and decrees said devises of stock to the defendants Sarah M. Vernon and Mary E. Flower to be specific devises.

"The court further finds that all legacies in said will charged upon life insurance funds are demonstrative, and that the five hundred dollars bequeathed to Frank B. Hatch, and the fifty dollars per month to Mrs. Cordelia Hatch, and the one hundred dollars to Mrs. Vernon and her two daughters, all charged upon the Boston Clothing Store in said will, are demonstrative legacies.

"The court further adjudges and decrees that the following legacies are general:

"First.   The general residuary bequests to the widow and children and bequest to the widow of all items of property not mentioned in the will.

"The court further finds and orders that the surplus now in the hands of the executor, W. H. Waters, derived from the policy in the Banker's Life Insurance Company, be charged with the payment of the lot in the cemetery mentioned in the will, and that the funeral expenses be charged to the fund derived from the testator's notes in the safe at the time of making his will, and that if the funds derived from said sources be insufficient for these purposes that it is ordered that the residue be paid from the proceeds and moneys derived from the accounts of the Boston Clothing Store collected by the administrator.

"It is further considered and adjudged that the executor be, and he is hereby, directed and ordered to

determine from his accounts at what date the proceeds of the sales of goods from the Boston Clothing Store and the collection of accounts and notes, after deducting the expenses of operating said store, were sufficient to pay or provide for the payment of all debts and obligations of said store mentioned in the will, and that said executor is directed that all funds and moneys arising from the collection of notes and accounts of said store after said time, and from the sale of furniture, be carried into the general fund of the estate, and that all moneys arising from the sale of stock and after said time when the proceeds of sales and collections were sufficient as aforesaid to discharge said debts and obligations be disposed of as follows:  Five hundred dollars thereof be paid to the defendant, Frank B. Hatch, and one-third of the remainder each to the defendants Cordelia Hatch, Sarah M. Vernon and Mary E. Flower, and the court finds and decrees that the legacies of one-third each of the proceeds of said stock to Cordelia Hatch, Sarah M. Vernon and Mary E. Flower, are specific and not subject to abatement for the purpose of paying debts and expenses of administration of said estate.

"The court finds and determines that by the terms of said will, Cordelia Hatch, widow of the deceased, is made residuary legatee, and is only entitled to what remains of the personal estate not otherwise disposed of by said will, after the debts and the expenses of administration have been paid and is not entitled to call on the general, specific or demonstrative legacies or devises for abatement until after the personal estate not specifically bequeathed is exhausted.

"The court further orders and decrees that if there is a deficiency of the assets for the payment of bequests, abatement must be made in the following order: 1st, residuary bequests; 2d, general legacies, 3d, demonstrative and specific devises and legacies pro rata.  And the court directs the executor to administer the assets of said estate in the following order:  1st, the widow's

legal demand of $400 and one year's provisions; 2d, expenses of administration; 3d, debts not provided for by will; 4th, specific devises and bequests; 5th, general legacies; 6th, residuary bequests.

"The court further adjudges and decrees that by the terms of the said last will and testament of W. H. Hatch, there are bequeathed and devised to the defendant, Mary E. Flower, two annuities of two hundred dollars each, to be paid to her by her brother, the defendant F. B. Hatch, each to be paid quarterly in sums of fifty dollars, payment to begin on the death of the defendant, Cordelia Hatch, and to continue during the natural life of Mary E. Flower; one of the said annuities of two hundred dollars to be paid on the brick store building situate on the west half of the south half of lot twenty-four in the original town (now city) of Carthage, unless it be found necessary to sell said store building and lot, or unless said Frank B. Hatch and Mary E. Flower agree to sell the same, when by the terms of said will the said Mary E. Flower and Frank B. Hatch are to share equally in the proceeds thereof, the other of said life annuities provided for by the terms of said will to be paid by the defendant, Frank B. Hatch, to said Mary E. Flower, to be payable on the dwelling house, etc., situate on lot twenty-six in Lamb's addition to Carthage, which by the terms of said will is made a lien and charge on said dwelling house and lot.

"The court further finds from the evidence that one of said annuities of two hundred dollars per year payable by the defendant, Frank B. Hatch, to the defendant, Mary E. Flower, on the brick store building aforesaid has by said defendant, Mary E. Flower, been released for value received.

"It is further ordered by the court that the costs in this case be paid by the executor out of the funds of the estate, as costs and expenses of administration."

After due steps the defendant, Frank B. Hatch, appealed.

## I.

The first error asigned is that the circuit court erred in charging the homestead with twenty-five dollars a month in favor of the widow, Cordelia Hatch.

Since the submission of this case a paper has been lodged with this court, which purports to be signed by Cordelia Hatch, and which disclaims any right to this rent charge. If this document is authentic, it ends this assignment of error. The paper will be ordered filed *de bene esse*.

But aside from this, the finding of the court that the widow is entitled to a rent charge of twenty-five dollars on the homestead is a misapprehension of the fourth clause of the will. By the will the widow is given a "life dower" (the will calls it) in the homestead, and is required to pay all taxes and insurance thereon and one-half of the expense of all necessary repairs. This right, however, is subject to the right of Mrs. Vernon to have the use of one room therein. The mistake of the trial court in this regard doubtless arose from the fact that by the first clause of the will the widow is given a rent charge of thirty dollars a month on the store property, while by the fourth clause of the will this rent charge is inadvertently referred to as one for only twenty-five dollars a month.

The circuit court should not have declared that the homestead was subject to any such charge. But the judgment will not be reversed for this error, because of the disclaimer aforesaid of the widow, and because the widow and the appellant made common cause in the trial court, filed a joint answer and are really the only persons who have any interest in the question whether such a charge should be made against the homestead or not. Neither the daughters nor the executor have any interest whatever in the matter, and, therefore, it would be unjust to reverse the judgment because of this error,

and thereby to make these innocent and disinterested parties pay the costs of this appeal. For these reasons the decree of the circuit court will be modified by striking out the allowance of this rent charge on the homestead, but without costs to the respondents in consequence thereof.

## II.

The second error assigned is that the court erred in adjudging a rent charge of two hundred dollars a year on the homestead, in favor of Mrs. Flower, after the death of the widow.

The circuit court decreed that there were two annuities of two hundred dollars each, required to be paid by Frank to his sister Mrs. Flower, after the death of the widow, and which are charged upon the store and the homestead respectively.

A careful reading of the will fails to disclose any provision therein which warrants or affords any support for the finding that the homestead is subjected to any such rent charge, and the trial court erred in so declaring.

The third clause of the will creates such an annuity in favor of Mrs. Flower and charges it upon the store, after the death of the widow, and the fourth clause does the same thing. But this is clearly a repetition. The error of the trial court manifestly arose from a failure to distinguish between the first paragraph of the fourth clause of the will and the remainder of that clause. The first paragraph of the fourth clause treats of the homestead, and must be read in connection with the first paragraph of the first clause of the will. The scheme of the will in reference to the homestead is to give it to the widow for life, subject to the right of the daughter, Mrs. Vernon, to use one room therein, and after her death to give it to the son, Frank. While the widow lives she is required to pay the taxes and insurance and one-half of the cost of the necessary repairs. The re-

mainder of the fourth clause treats of the store prop-
erty, and must be read in connection with the second
paragraph of the first clause of the will.   The scheme
of the will in reference to this store property is to charge
it with an annuity of thirty dollars a month in favor
of the widow for her life, and after her death to charge
it with an annuity of two hundred dollars, payable
quarterly, in favor of Mrs. Flower for life.   Frank is
required to pay all taxes and insurance on the property
and one-half of the expense of repairs, and the other
half of the expense of the repairs is required to be
paid by the annuitant.   Subject to this, the property is
bequeathed to Frank.   But in case Frank and Mrs.
Flower deem it best to sell this store property, the pro-
ceeds are required to be divided between them.

The confusion which gave rise to the ruling of the
trial court in this regard, as also in respect to the
charge of twenty-five dollars on the homestead herein-
before referred to, arose from the interpolation of the
note with respect to Mrs. Vernon's right to occupy a
room in the homestead, in the middle of the second
paragraph of the fourth clause of the will, instead of
between the first and second paragraphs of that clause,
as it should have been.   The context of that clause,
especially when read in connection with the first and
third clauses of the will, clears up the matter and makes
the intention of the testator perfectly plain.

## III.

The third error assigned is not finding that the
bequest of a note of $500 of the Boston Clothing Com-
pany to Mrs. Vernon, under clause two of the additional
bequests, had been adeemed.

This is based solely upon the contention that before
his death the testator gave this note to his wife, and
hence there was nothing left for this provision of the
will to apply to.

But this contention must fail, becau˜˜ there is no evidence whatever in the record to support it. The note was indorsed by the testator to his wife, but it was never delivered to her, and was found among his papers by the executor after his death.

## IV.

It was next claimed that the legacy of sixty shares of stock of the Carthage National Bank to Mrs. Vernon is not a specific legacy.

The second clause of the will separates these shares from the balance of the estate and bequeaths them to Mrs. Vernon. It would be hard to conceive of a more specific legacy.

"A specific legacy or devise is a gift by will of a specific article or part of the testator's estate, which is identified and distinguished from all other parts of the same kind, and which may be satisfied only by the delivery of the particular thing." [18 Am. and Eng. Enc. Law (2 Ed.), p. 714, and cases cited.]

There was no error in the ruling of the trial court upon this question.

## V.

It is next claimed that the court erred in awarding Mrs. Flower the twenty shares of stock in the Central National Bank, and in declaring the legacy to be specific.

The third clause of the will bequeathed to Mrs. Flower twenty shares of stock in the Carthage National Bank. The testator owned only sixty shares of stock in the Carthage National Bank, and these he bequeathed by the second clause of his will to Mrs. Vernon. He thereby disposed specifically of all the shares of stock he owned in the Carthage National Bank. He owned twenty other shares of stock, however, in the Central National Bank. It is conceded that he intended to dis-

pose of all his property, and this purpose is plainly manifest in every line of his will. He did not, therefore, intend to die intestate as to these twenty shares of stock, nor did he contemplate that they should fall into the residuum of his estate, which he left to his wife, for he had provided for her specifically. [Robards v. Brown, 167 Mo. 447.]

The testator was providing for his daughter, Mrs. Flower, by the third clause of his will. By other clauses he provided for his wife and other children. He must have known that he had already given Mrs. Vernon all of the shares of stock he had in the Carthage National Bank. It is equally clear that he knew he had twenty other shares of bank stock that he had not disposed of and that he intended to give these to his other daughter, Mrs. Flower. By a mistake he spoke of them as being shares of stock in the Carthage National Bank, instead of in the Central National Bank of Carthage. By following the letter of the will and shutting the eyes to the intention of the testator, this provision of the will would be nullified. But if the intention is observed the clause is full of meaning. It is the duty of the court to give such a construction to a will as will effectuate the manifest intention of the testator as discerned from the whole will itself, and not to so construe it as to cause any of the provisions to perish. [Briant v. Garrison, 150 Mo. 655.]

The circuit court properly held that the Central National Bank was intended, and that the legacy was specific.

## VI.

It is lastly claimed that the appellant, Frank B. Hatch, is entitled to the $190 excess arising out of the four thousand dollar insurance policy in the Banker's Life Insurance Company after paying the twenty-four

hundred dollars due to the bank, and after paying the specific legacies of five hundred dollars each to the widow and the two daughters, and the one hundred dollars to Frank, as required by the fifth clause of the will.

The policy was for four thousand dollars. The will disposed of four thousand dollars. By reason, however, of a payment of one hundred dollars on the policy after the will was made and before his death, and by reason of certain earnings of the company that the insured became entitled to, the policy yielded an excess of $190 over the face value.

The claim of the appellant is based upon the words "the bal." on the line of the will relating to this policy after Frank's name, and although this is followed by the figures $100, it is contended that it was the intention to give him whatever remained of the policy, that is, the balance of the fund after paying the other specified sums.

The appellant overlooks the point, however, that by so contending he admits that so far as this devise to him is concerned such a construction would subject the devise to him to a claim that it was thereby made general and not definite and specific, and if this is true, then the $100 named as well as the excess of $190 would be subject to appropriation to the payment of the debts and expenses of the estate.

But aside from this, the claim that this $190 excess is a specific or even a general legacy, is untenable. It was not in the contemplation of the testator when he drew the will, and a part of it was not in existence at that time, and was, therefore, no part of a specific thing which he was separating from the balance of his estate and disposing of specifically. The appellant gets all of the specific legacy arising out of the insurance policy that his father intended him to have.

There is no error in the ruling of the circuit court upon this question.

The judgment of the circuit court is modified by striking out the annuity of twenty-five dollars a month in favor of the widow and charged upon the homestead (Lot 26 of Lamb's Addition), and also by striking out the annuity of two hundred dollars a year in favor of Mrs. Flower and charged upon the homestead (Lot 26 aforesaid), and after being so modified, the judgment is affirmed, but because of the second modification the costs of this appeal are assessed against the defendant, Mrs. Mary E. Flower.   All concur.

PER CURIAM.—In accordance with a stipulation, signed by all the parties hereto, the foregoing opinion is modified so as to adjudge the costs of this appeal against the estate of 'W. H. Hatch, deceased, and the executor thereof is ordered to pay the same.   All concur.