## SOUTHERN PINE LUMBER COMPANY *v.* WARD.

ERROR TO AND APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF OKLAHOMA.

No. 82.   Submitted December 17, 1907.—Decided January 20, 1908.

Although the record was not docketed until more than thirty days after the appeal was allowed, as it was accomplished soon afterwards and meanwhile no motion was made to docket and dismiss under Rule 9, a motion subsequently made was denied.

Jurisdiction of this court attaches upon allowance of the appeal and proceedings are to be taken here to bring in the representative of an appellee who dies after the acceptance of service of citation.

An appellee, who has not himself appealed, cannot be heard in this court to assail the judgment below.

*Nat. Live Stock Bank* v. *First Nat. Bank*, 203 U. S. 296, 305, followed, as to when jurisdiction of this court to review judgments of the Supreme Court of the Territory of Oklahoma is by appeal and not by writ of error.

*Halsell* v. *Renfrow*, 202 U. S. 287, followed, as to when this court, in reviewing a judgment of the Supreme Court of the Territory of Oklahoma, is confined to determining whether that court erred in holding that there was evidence tending to support the findings made by the trial court in a case submitted to it by stipulation, without a jury, and whether such findings sustained the judgment.

In this case this court holds that the Supreme Court of the Territory did not err in finding that there was evidence to support the findings made by the trial court and that those findings sustained the judgment.

THE facts are stated in the opinion.

*Mr. Arthur A. Birney* and *Mr. Henry F. Woodard* for plaintiffs in error and appellants.

*Mr. John C. Moore, Mr. D. W. Buckner* and *Mr. George W. Buckner,* for defendants in error and appellees.

MR. JUSTICE WHITE delivered the opinion of the court.

Not unmindful that upon this record we are bound by the findings of fact below made and are confined to determining whether the facts as found sustain the judgment, if there is evidence supporting the findings, and, without departing from that rule, we at the outset refer, in chronological order, to some facts which are alleged in the pleadings, which are either directly or by necessary implication established by the findings, and as to which there can be no dispute whatever. We do this in order, if possible, to dispel the obscurity resulting from the prolixity of the pleadings, the unnecessary volume and confusion of the record, and the want of accuracy manifested by some of the assignments of error relied upon.

Prior to June, 1891, two partnerships were located in Texas —one, Grigsby Brothers; the other, the Union Mills Lumber Company, sometimes called the Union Lumber Mills Company. The first (Grigsby Brothers) was composed of G. M. D. Grigsby and D. J. Grigsby; the second (Union Mills Lumber Company) of the two Grigsbys owning four-fifths interest and T. L. L. Temple, one-fifth. At the same time there was located in Arkansas a firm known as the Southern Pine Lumber Company, composed of T. L. L. Temple and Benjamin Whitaker. Prior to June, 1891, D. J. and G. M. D. Grigsby became the recorded owners of the following real estate situated in the city of Oklahoma and in the town of Guthrie, Oklahoma Territory, viz: 1st, an undivided four-fifths interest in five lots in block 60, Oklahoma City; 2d, an undivided four-fifths interest in one lot, in block 54 of the town of Guthrie proper; an undivided four-fifths interest in and to an undivided one-half interest in block 43 in the town of Guthrie, and a like undivided four-fifths interest in a one-half interest in two lots in block 43 and one lot in block 51, East Guthrie. A like one-fifth undivided interest in the same lots was simultaneously acquired and recorded in the name of T. L. L. Temple. In June, 1891, the National Bank of Jefferson, in Jefferson, Texas, discounted

for Grigsby Brothers a note of that firm for $5,000.00. The note was dated June 11, 1891; matured in ninety days; bore twelve per cent interest from maturity, and stipulated for a ten per cent attorney's fee in case of suit to collect. This note was secured by a deed of trust embracing the undivided interest of the Grigsbys in the lots above referred to. E. F. Pentecost, the trustee named in the deed, was empowered, in case of default in payment of the debt to the bank, to sell and apply the proceeds to the payment of the note. This deed was duly recorded in Oklahoma Territory. In August, 1891, the American Exchange Bank of St. Louis discounted for T. L. L. Temple a·note of the Union Mills Lumber Company, drawn for it by D. J. Grigsby. This note was for $884.90, payable in ninety days; bore twelve per cent interest from maturity, and contained a ten per cent attorney's fee clause. It was indorsed ·by T. L. L. Temple individually and by the Southern Pine Lumber Company. This note not having been paid at maturity, the American Exchange Bank of St. Louis, in November, 1891, sued on the note in a state court at Dallas, Texas. The defendants were the two Grigsbys and Temple as partners in the Union Mills Lumber Company, the maker of the note, Temple and Whitaker as partners in the Southern Pine Lumber Company, the indorsers, and Temple individually because of his personal indorsement. Judgment was entered against all the defendants, as members of the two firms and individually, for $1,022.38, the principal, interest, and attorneys' fees. An execution was returned in February, 1892, satisfied "by collecting the full amount of principal and costs and interest of this execution from T. L. L. Temple." In September, 1892, a corporation called the Southern Pine Lumber Company was organized under the laws of Arkansas at Texarkana in that State. T. L. L. Temple was one of the incorporators and subscribed to 997 out of a total of 1,000 shares, and he became the president of the company. In October, 1893, at Texarkana, Texas, a corporation called the Southern Pine Lumber Company was organized under the laws of Texas. Temple was an·

incorporator and became its president. In November, 1894, in the District Court for Logan County, Oklahoma Territory, a suit was commenced in the name of the American Exchange Bank of St. Louis against T. L. L. Temple and Benjamin Whitaker as partners in the Southern Pine Lumber Company; the Southern Pine Lumber Company, the Arkansas corporation, D. J. and G. M. D. Grigsby and T. L. L. Temple as partners of the Union Mills Lumber Company. The petition counted upon two causes of action: first, the judgment which had been rendered in the Texas state court at Dallas as if that judgment was still due the bank and had not been satisfied, and second, the sum of $294.56, which was an open account alleged to be due by the Union Mills Lumber Company and the partners thereof, the two Grigsbys and Temple, to the partnership known as the Southern Pine Lumber Company, composed of Temple and Whitaker. This open account, it was alleged, had been transferred by the partnership in 1893 to the Southern Pine Lumber Company, a corporation, which latter, it was averred, had transferred the account to the American Exchange Bank. The defendants, being all non-residents of Oklahoma, were summoned after affidavit by publication and upon affidavit attachments were issued. The undivided interest of the Grigsbys and Temple in the lots in Oklahoma and Guthrie were attached. Ultimately a judgment was rendered in favor of the American Exchange Bank and against the defendants for the amount of the Texas judgment plus the open account sued upon, with interest and costs. The liens of the attachments were recognized, and under execution the interest of the Grigsbys and Temple in the lots in Oklahoma and Guthrie were sold and bought in by "the Southern Pine Lumber Company, a corporation," for a sum less than the judgment debt. In the meanwhile the five thousand dollar note remained unpaid in the hands of the National Bank of Jefferson, the note having been extended from time to time. In 1896 that bank failed, and the note and trust deed were among the assets of the bank in the hands of the receiver appointed by the Comp-

troller of the Currency. In December, 1898, with the approval of the Comptroller, sanctioned by an order of the United States District Court, there was paid the receiver of the bank in settlement of the rights of the bank, $2,000, and the receiver at the time of this payment by a writing assigned and transferred in blank all the right, title and interest of the bank in and to the note and the trust deed securing the payment of the same. The $2,000 was paid by means of a check of a corporation known as the Grigsby Construction Company. With these undisputed facts in hand we now come more immediately to state the case.

This suit was commenced in May, 1900, by a petition filed on behalf of W. B. Ward in the District Court of Logan County, Oklahoma, alleging himself to be the owner of the five thousand dollar note originally held by the National Bank of Jefferson. A decree for the sum of the note, principal, interest and attorney's fees, and for the foreclosure of the trust deed, was prayed. It was alleged that although the note had been renewed from time to time, but was then past due, Pentecost, the trustee, had declined to act, and therefore he was made a defendant. It was, moreover, alleged that certain persons, who were named, asserted title to the property embraced by the trust deed in virtue of an alleged purchase made under an execution issued to enforce a judgment rendered in favor of the American Exchange Bank, and that said claim was a cloud upon the title to the property embraced by the trust deed, which the plaintiff wished to have removed; that all the proceedings in the attachment suit were without effect upon the rights of the holder of the note, because neither the trustee nor the National Bank of Jefferson were made parties to that suit, although the trustee was at the time when the suit was brought a resident of Oklahoma and the trust deed was there duly of record. It was, moreover, alleged that the judgment and sale in the attachment suit were void, because no actual or even constructive notice had been given to the defendants in the suit, and that the purchaser at the sale had knowledge

of the trust deed, of the failure to make the trustee a party and of the absence of notice, actual or constructive, to the defendants in the attachment suit. A judgment was prayed decreeing the proceedings in the attachment suit and the sale made therein to be void and for an enforcement of the trust deed by a sale of the property to which that deed related. The persons made defendants were Pentecost, the trustee; the Southern Pine Lumber Company, a corporation existing under the laws of the State of Arkansas; T. L. L. Temple and Benjamin Whitaker, partners under the name of the Southern Pine Lumber Company; G. M. D. Grigsby and D. J. Grigsby, composing the firm of Grigsby Brothers; G. W. R. Chinn and his wife, and T. L. L. Temple individually, and other persons whom it is unnecessary to name. The defendants, the Southern Pine Lumber Company, T. L. L. Temple, G. W. R. Chinn and his wife, filed a joint answer. The discount of the five thousand dollar note by the National Bank of Jefferson and the execution of the deed of trust securing the same was admitted, but the right of Ward to sue upon the note was denied, it being averred that the note had been extinguished by payment made to the receiver of the National Bank of Jefferson. The proceedings for the sale of the property in the attachment suit were also admitted, and the validity of the purchase made in virtue of the execution issued in that suit was asserted. It was alleged that the answering defendants G. W. R. Chinn and his wife have a complete and perfect title in fee simple to the lots embraced in the trust deed situated in Oklahoma City, and that "the Southern Pine Lumber Company claims and charges that it has perfect title to all the property described in said trust deed situated in the city of Guthrie, Oklahoma Territory, which they acquired by purchase." The answer admitted that although the trust deed was of record at the time of the attachment proceedings, as no notice was given to the trustee or the National Bank of Jefferson, those proceedings did not affect the rights secured by the deed, but that all such rights, if any, had ceased to exist in virtue of the payment

of the note, to secure which the trust deed had been executed. Charging that the trust deed as remaining on the record was a cloud upon their title, the prayer was not only for a dismissal of the petition of the plaintiff, but for affirmative relief in favor of the defendants by decreeing them to be the owners of the property, free from the operation of the trust deed.

The two Grigsbys answered, admitting the execution of the note and trust deed by which it was secured, and that the note was due by them to Ward, the plaintiff, who held the same, as well as the trust deed, by a valid assignment from the National Bank of Jefferson. By way of answer to the affirmative relief prayed by the other defendants, and as a cross-complaint, it was, with great elaboration, alleged that the proceedings in the attachment suit and the sale made thereunder were absolutely void. To support this averment it was charged that the attachment suit was a mere fraudulent scheme devised by Temple for the purpose of defrauding them of their undivided interest in the lots in Oklahoma City and Guthrie; that the judgment sued on in Oklahoma in the name of the American Exchange Bank of St. Louis had long prior to the bringing of the suit been satisfied, and that the suit was brought in the name of the American Exchange Bank without the knowledge of that bank or under its authority, and was therefore actually prosecuted by Temple against himself in order to accomplish the fraud which he had in view. That the alleged open account embraced in the attachment suit had never, in any way, been transferred to the American Exchange Bank, and that that bank had no knowledge of or connection with the account. It was, moreover, alleged that the proceedings in the suit were additionally void, because of the entire absence of legal notice, actual or constructive, to the parties defendant who had interests to protect in that cause. It was averred that the debt represented by the note originally sued on in Texas by the American Exchange Bank was due solely by Temple, and that in satisfying the judgment which had been rendered on the note, he, Temple, had paid his own debt, because the note had

been given in the name of the Union Mills Lumber Company to Temple as a part of the settlement of the partnership affairs, he coming under the obligation to pay the note, but if the note could be treated as a liability of the firm they (the two Grigsbys) would have paid any proportion due by them as partners of the Union Mills Lumber Company, had any notice, actual or constructive, been given them of an alleged claim on the part of Temple against them growing out of the note and the satisfaction by him of the judgment rendered upon the note in the Texas court.

A demurrer was filed by the defendants, the Southern Pine Lumber Company and Chinn and wife, to the cross-complaint of the Grigsbys, on the ground that it showed no right to relief, that it sought collaterally to attack the judgment rendered in the attachment suit, and that the facts alleged disclosed such laches as estopped from recovery. Immediately afterwards a general denial was filed by the same persons without any reservation of the demurrer. The case by stipulation was submitted upon the evidence taken to the court without a jury. The court decided in favor of Ward, the plaintiff, and in favor of the Grigsbys on their cross-complaint. Two formal judgments were entered on the journal, one relating to the claim of Ward and the other to the cross-complaint of the Grigsbys. In the judgment in favor of the plaintiff Ward the journal entry recites: "And the court, after hearing the evidence, finds that all of the allegations contained in the plaintiff's petition, filed herein, are true, and that there is due from defendants G. M. D. Grigsby and D. J. Grigsby to the plaintiff W. B. Ward, on the note and mortgage sued on in this action the sum of fifty-one hundred dollars, and that said note specifies that said indebtedness shall bear interest," etc.

Again: "The court finds that the trust deed sued upon in this action and the note which said deed was given to secure, are each legal and valid as against the defendants G. M. D. Grigsby and D. J. Grigsby; that the plaintiff is entitled to have said deed foreclosed as a mortgage in this action."

Again: "The court further finds that W. B. Ward, the plaintiff in this action, is, at this time, the owner of said note and trust deed."

In considering the proceedings in the attachment suit and the prayer of Ward's petition that the sale under said proceedings be held to be void and the cloud upon his rights created thereby be removed, the court found:

"From the evidence that the judgment in cause number 1524, entitled the American Exchange Bank of St. Louis, Mo., against the Southern Pine Lumber Co. *et al.* defendants, rendered in the District Court of Logan County, Oklahoma Territory, on the 2nd day of March, 1895, and all proceedings or transfers of property under and by virtue of said judgment and cause of action, are each null and void and of no force and effect, and that the purchasers at the sale of the property levied upon, under such judgment, took nothing by their purchase; the court finds that the trust deed sued upon in this action and the note which said deed was given to secure, are each legal and valid as against the defendants G. M. D. Grigsby and D. J. Grigsby, that the plaintiff is entitled to have said deed foreclosed as a mortgage in this action."

And in accordance with these findings a judgment was entered in favor of Ward, the plaintiff, for the amount of the note, principal and interest, directing the sale of the property embraced in the trust deed and the application of the proceeds, first, to the payment of costs; second, to the payment to Ward of the principal and interest of the note and attorney's fees, and the turning over of the residuum, if any, to the Grigsbys as the owners of the property, and barring all rights of the other defendants in the property.

The judgment disposing of the cross-petition of the Grigsbys declared, concerning the debt of Ward, as follows: "The court further finds from the evidence and the pleadings that it is admitted by the defendants G. M. D. Grigsby and D. J. Grigsby, the cross-petitioners in this action, that they are indebted to the plaintiff W. B. Ward by reason of the note and trust

deed . . . and that said debt is a legal and subsisting
debt as against the defendants, and is a legal charge upon the
property involved in this action." Concerning the attach-
ment proceedings and the sale made thereunder it was ex-
pressly found from the evidence that the defendants and
cross-complainants, the Grigsbys, had no knowledge of the
pendency of the action in time to appear and make defense
thereto, that the affidavits for publication and for attachment
were wholly insufficient and did not state facts adequate to
confer jurisdiction upon the court, that the petition also failed
to state facts sufficient to confer jurisdiction, and that all the
steps taken in the attachment suit, including the sale, were
wholly void and of no effect. Concerning the averments
of fraud in the bringing of the attachment suit in the
name of the American Exchange Bank the court found as
follows:

"The American Exchange Bank of St. Louis, Mo., the plain-
tiff in said action, never at any time brought said suit, or au-
thorized any one to bring said action in its name, and had no
knowledge of the pendency of said action until a long time
after the rendition of the judgment therein and the property
had been sold thereunder. The court further finds it a fact
that the defendants in said action did not owe the plaintiff,
the American Exchange Bank, any sum or sums of money;
the court further finds as a fact that said action was prosecuted
by one of the defendants as against himself and other defend-
ants in the name of the American Exchange Bank, without its
knowledge or consent, and for the purpose of defrauding these
defendants and cross-petitioners out of their property rights
involved in this action, and the court further finds that said
action was a fraud and an imposition upon the court as well
as on the defendants and cross-petitioners; the court further
finds that the Southern Pine Lumber Co., a corporation, and
T. L. L. Temple and all other persons purchasing at the sheriff's
sale under the judgment in said cause number 1524 above
referred to and their grantees, took nothing by their pur-

chase, by reason of said judgment and proceedings had thereunder, being without jurisdiction in the court and absolutely void."

A judgment was entered avoiding the sale made under the attachment proceedings and awarding the Grigsbys the property, subject to the enforcement of the rights of Ward under the deed of trust. After an unsuccessful attempt to obtain a new trial, error was prosecuted to the Supreme Court of the Territory. That court, after elaborately disposing of motions to dismiss, affirmed the judgment. The court held that it was unnecessary to consider the sufficiency of the affidavits for publication and attachment in the attachment suit, as the findings below concerning the fraud in bringing that suit and the absence of a party plaintiff therein sustained the action of the trial court.

"The Southern Pine Lumber Company, a corporation," T. L. L. Temple and G. W. R. Chinn and his wife, appealed and moreover prosecuted a writ of error. Our jurisdiction to review is by appeal (*Natl. Live Stock Bank* v. *First Natl. Bank,* 203 U. S. 296, 305, and cases cited), and therefore we dismiss the writ of error from consideration.

On September 15, 1907, a motion to dismiss was postponed to the merits. The grounds are that the cause was not docketed within the time required by rule of this court, because proper parties were not made in the court below, and because the court below erred in not sustaining a motion to dismiss, and moreover because the assignments of error here relied on are insufficient.

The judgment was rendered on September 7, 1905. On June 12, 1906, the appeal was allowed. While the record was deposited with the clerk of this court within thirty days, it was not docketed until after thirty days, because the counsel who originally forwarded the record were not attorneys of this court, and hence not qualified to enter their appearance. As the docketing was accomplished soon afterwards (August 10, 1906), and no motion to docket and dismiss under Rule 9 was

made, the contention is without merit. *Green* v. *Elbert*, 137 U. S. 615; *Richardson* v. *Green*, 130 U. S. 104.

Service of citation was accepted by all the appellees. The acceptance on behalf of G. M. D. Grigsby and D. J. Grigsby, late partners as Grigsby Brothers and individually, was made on June 15, 1906, by their attorney of record. On June 30, 1906, G. M. D. Grigsby died. In this court the death of G. M. D. Grigsby was suggested and the proper order for publication was made and the return thereof filed. The contention is that the proceedings to make the representatives of G. M. D. Grigsby parties should have been taken in the court below and that hence the notice of publication for that purpose had in this court was ineffective. The answer to the proposition is, that the jurisdiction of this court attached upon the allowance of the appeal. *Evans* v. *State Bank*, 134 U. S. 330, 331, and cases cited. And, although, by a subsequent failure to duly prosecute, the benefits of the appeal might have been lost (*Grigsby* v. *Purcell*, 99 U. S. 505, 508), yet, clearly, as not only had the appeal been allowed, but citation had been issued and acceptance of service thereof been made by the attorney of record of the Grigsbys during the lifetime of both, the appeal was pending in this court at the time of the death of G. M. D. Grigsby, and as the case had been docketed proceedings were rightfully taken here to make his representative a party.

The remaining grounds, viz., the failure of the court below to dismiss and the inadequacy of the assignments of error, involve no question concerning our jurisdiction. In order, however, to at once dispose of the first contention we observe that the appellees cannot be heard to assail the judgment below, since they did not appeal. *Field* v. *Barber Asphalt Paving Co.*, 194 U. S. 618, 621, and cases cited.

We come to the merits. Before doing so it is necessary to fix accurately the scope of our inquiry. The case was submitted to the trial court by stipulation without a jury. That court by virtue of the Code of Civil Procedure of Oklahoma was empowered to make findings of fact as the basis of its

conclusions of law. Rev. Stat. of 1903 (4477), § 279. On the writ of error which was prosecuted to the Supreme Court of the Territory that court was confined to determining whether the findings of the court below sustained the judgment if there was evidence supporting the findings and was not at liberty to consider the mere weight of the evidence upon which the findings were made by the trial court. Under these circumstances, notwithstanding the ruling in *Natl. Live Stock Bank* v. *First Natl. Bank, supra,* pointing out the difference between the method of reviewing a case coming from the Territory of Oklahoma and cases coming from the Territories generally, our review in the case before us is confined to determining whether the court below erred; that is, whether that court was mistaken in holding that there was evidence tending to support the findings and that such findings sustained the judgment. *Halsell* v. *Renfrow,* 202 U. S. 287.

1st. It is contended that the court below erred because it did not find, as a matter of fact, that the debt was due Ward, but contented itself, as did the trial court, with assuming the debt to be due, merely as a result of a collusive admission made by the Grigsbys to that effect in their answer, thus depriving the defendants of the property acquired by them in the attachment proceedings because of the weakness of their title, and not on account of the establishment of an adverse right in Ward. It being, moreover, insisted that as the failure to find affirmatively in favor of Ward's debt, irrespective of the admission made by the Grigsbys, required the rejection of Ward's demand, a like result was necessary as to the cross-petition of the Grigsbys, since that petition was purely ancillary to the original demand of Ward for relief, and therefore should have shared a like fate.

It is apparent that these contentions rest upon the proposition that no finding was made by the court below concerning the existence of the debt of Ward. The proposition is thus stated in the brief of counsel:

"In the judgment of the District Court the only finding as

to Ward's debt is that 'from the evidence and the pleadings it is admitted by the defendants G. M. D. Grigsby and D. J. Grigsby, the cross-petitioners in this action, that they are indebted to the plaintiff,' " etc.

The words thus quoted are taken from the findings and judgment of the trial court disposing of the cross-petition of the Grigsbys, but these words immediately follow the passage relied on:

"By reason of the note and trust deed sued on by the plaintiff in this action in the sum of five thousand seven hundred and ninety-seven dollars ($5,797.00) and that said debt is a legal and subsisting debt as against the defendants and is a legal charge upon the property involved in this action."

But putting this out of view, the inaccuracy of the statement that the passage referred to is "the only finding as to Ward's debt," is patent on the face of the record. We say this because the statement overlooks the explicit findings which the trial court made, as to the proof of Ward's debt, in the judgment which was entered concerning that debt which we have previously quoted. In so far as the proposition assails the sufficiency of the evidence to sustain the express findings concerning the debt of Ward, it suffices to say that we think it is beyond question that there was testimony tending to show that the note and trust deed originally held by the National Bank of Jefferson had been acquired by Ward for a valuable consideration. Indeed, that the proposition now relied upon is a mere afterthought is demonstrated by the application for a new trial made in the trial court, since such application, among others, was expressly based upon the ground that the court had erred in finding that Ward's debt had been established. And the same is substantially true of the assignments of error made for the purposes of the writ of error to the Supreme Court of the Territory. In other words, having asserted below that error was committed because the trial court had found that Ward's debt was established by the proof, it is now insisted that the court erred because no such finding was made.

While if there had been no evidence tending to sustain the claim of Ward other than the admission of the Grigsbys, such admission might not have been adequate as tending to sustain a finding in favor of Ward, clearly such admission, considered in connection with the findings below concerning the proof of the debt of Ward, is sufficient to answer the argument that relief should not have been given Ward, because the note upon which he sued was held by him as collateral security. We say this because as the note indorsed by Ward to secure his freedom from liability upon which the collateral was held by him was outstanding and past due, the right of Ward to enforce the collateral was a matter solely between himself and the Grigsbys with which the purchasers at the attachment sale were not concerned, as they had failed in establishing their plea that the collateral held by Ward had been extinguished by payment.

2d. It is insisted that the court below erred in not dismissing the action on the ground of the laches of the Grigsbys in assailing the proceedings in the attachment suit. This objection can have no relation to the claim of Ward, since the findings below exclude the conception that Ward's debt was barred by limitation, and, indeed, the case was tried upon the admission of all the defendants that the debt of Ward was due at the time of the bringing of the attachment proceedings, and upon the assertion of Temple, and those who answered with him, that that debt had been, subsequent to the attachment proceedings, extinguished by payment. True, it is, that laches on the part of the Grigsbys was made one of the grounds of the demurrer filed to their cross-petition, but the answer contained no reservation of the demurrer and the findings of the trial court, as well as the action thereon of the Supreme Court of the Territory, negate the conception that the courts below could have been of the opinion that facts sufficient to show laches had been establi ed. Besides, the contention as to laches disregards the con iderations which in the nature of things must arise, when it is borne in mind that the defendants,

who claimed title under the attachment proceedings, did not rest content with defending their alleged title, but made that title the basis of an assertion of a right to affirmative relief, since they substantially, by cross-petition, invoked such relief to maintain the validity of their title, and to obtain a cancellation of the trust deed upon which Ward relied.

3d. It is urged that the court below erred in passing upon the validity of the attachment proceedings, because there was an absence of a party whose presence was essential to a decision of that question. This is based upon the assertion that T. L. L. Temple, who testified that he was president of both the Southern Pine Lumber Company, the Arkansas corporation, and of the Texas corporation of the same name, also testified that the Arkansas corporation went into liquidation in 1893, and that the Texas corporation was the purchaser at the attachment sale, and was therefore the owner of the property involved in the suit. It is insisted that as there was no evidence tending to dispute this testimony, there was nothing justifying the conclusion that the Arkansas corporation had an interest in the property, or had the capacity to stand in judgment concerning the validity of the sale in the attachment proceedings and the title to the property held thereunder. We think the proposition is without merit. Ward, by his petition, made the Southern Pine Lumber Company, a corporation organized and existing under the laws of Arkansas, Temple and others, defendants, and did not refer to a Texas corporation, known as the Southern Pine Lumber Company, as having any rights whatever in the property. The answer filed on behalf of Temple and the Southern Pine Lumber Company, the Arkansas corporation, expressly asserted that that corporation owned the property and, in effect, implied that it was the purchaser at the attachment sale. And the same thing is, in effect, substantially true with reference to the cross-petition of the Grigsbys. As then, on the record, Temple was a party to the pleading, which expressly asserted title in the Arkansas corporation, and the whole controversy proceeded upon the truth

of that assertion, we cannot say that there was nothing justifying the trial court in treating the Arkansas corporation as the purchaser at the attachment sale and as the owner of the property, even if to reach that result the trial court may have been of the opinion that the testimony of Temple on the subject was not worthy of credit. And additional force to this view results from a consideration of the proceedings intervening subsequent to the findings and judgment of the trial court and the final judgment of the Supreme Court of the Territory. We say this because both the motion for a new trial made in the trial court on behalf of Temple and the Southern Pine Lumber Company of Arkansas and the assignments of error on behalf of the same parties, which were made for the purposes of the writ of error from the Supreme Court of the Territory, made no reference to the purchase and ownership by the Texas corporation, but in effect asserted the purchase and ownership by the Arkansas corporation. The first assertion upon the record outside of the testimony of Temple of any right on the part of the Texas corporation made its appearance in a motion for a rehearing, filed after the Supreme Court of the Territory had decided the case, and which was reiterated in the assignments of error filed on the appeal to this court. The right of the appellees to the judgment in their favor may not now be destroyed by a suggestion as to want of parties, made by the appellants after final judgment, when that suggestion conflicts with the issues as made up and upon which the case was tried, and which, if the suggestion be correct, would involve reversing the judgment at the request of the appellants because of deceit practiced by them upon the territorial courts. Because we dispose of the contention upon the reasons just stated, we must not be understood as deciding that, in view of the relations of Temple to the Texas corporation, as testified to by him, and the other circumstances disclosed by the findings below, it may not be that the judgment below was conclusive upon the Texas corporation, if it had title, although it was not technically a party to the record.

Into a consideration of that subject we do not deem it necessary to enter.

4th. It is insisted that error was committed by the trial court in its finding concerning the jurisdictional insufficiency of the affidavits for publication and attachment in the attachment suit. But the grounds upon which this is based simply go to the weight of the evidence concerning the findings made by the court on those subjects, and that is not open. Further, as we are clearly of the opinion that the conclusion of the Supreme Court of the Territory, based on the findings below, as to the fraud in bringing the attachment suit and the absence of a party plaintiff therein, are ample to sustain the judgment, irrespective of the affidavits for publication and attachment, the claim must be held to be without merit. It is, moreover, urged that the courts below erred in holding the sale void as to the Grigsbys, and in recognizing their equity in the property without condemning them to pay their proportion, as partners in the Union Mill Lumber Company, of the debt which was sued on in the attachment proceedings and in not taking into consideration improvements which it is asserted were put upon the property by the purchaser at the attachment sale. The first of these is placed in argument upon the ground that the cross-petition of the Grigsbys admitted that the debt sued on in the attachment suit was, as between them and Temple, a partnership debt, for which they were jointly liable with Temple. But this statement, as made in argument, is rested solely upon a partial consideration of the Grigsby cross-petition, and ignores the express allegation to the contrary which that petition contained. It suffices to say, however, as to both of these contentions that there is nothing in the record disclosing that they were directly or indirectly presented to the trial court by way of pleading or otherwise before final judgment, and indeed were not made the subject of complaint in the motion for a new trial, and were evidently regarded by the Supreme Court of the Territory as an afterthought and not open under the state of the record.                    *Affirmed.*