**VOGEL v. SAUNDERS.**

No. 6879.

United States Court of Appeals for the District of Columbia.

Argued March 9, 1937.

Decided June 21, 1937.

Andrew Wilson and Rawleigh L. Tremain, both of Washington, D. C., for appellant.

Elizabeth M. Cox, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

VAN ORSDEL, Associate Justice.

This is an appeal from an order of the District Court, sitting as probate court, for the sale of ten shares of stock and the ap-

plication of the proceeds of such sale to the payment of debts of an estate.

At the outset we àre confronted with a motion to dismiss this appeal, on the ground that the transcript of record was not filed in this court within the sixty-day period prescribed by rule 15. The instant appeal was perfected on August 11, 1936, and the time limit fixed by the rule expired on October 21, 1936. Appellant filed her transcript of record on November 14, 1936. Appellee moved to dismiss on November 17, 1936, consideration of the motion being postponed to the hearing on the merits.

Appellee points out that we have consistently granted motions to dismiss appeals where the transcript has been filed after the time limit prescribed by our rules. McCrane v. McGann, 2 App.D.C. 221; Dist. of Columbia v. Humphries, 11 App.D.C. 68, 70; Dist. of Columbia v. Roth, 18 App.D.C. 547; Gros v. Norment, 30 App.D.C. 574, 575.

Appellant urges that our holding on this point is contrary to that of the Supreme Court and the lower federal courts in enforcing similar rules. The federal rule is that a motion to dismiss on the ground that the transcript has not been filed within the prescribed time comes too late when the transcript has actually been filed. Bingham v. Morris, 7 Cranch, 99, 3 L.Ed. 281; Owings v. Tiernan, 10 Pet. 24, 9 L.Ed. 333; Sparrow v. Strong, 3 Wall. 97, 103, 18 L.Ed. 49; Southern Lumber Co. v. Ward, 208 U.S. 126, 28 S.Ct. 239, 52 L.Ed. 420; Altenberg v. Grant (C.C.A.6th), 83 F. 980; The Kawailani (C.C.A.9th) 128 F. 879.

After due consideration, we conclude that the federal rule operates more effectively to accomplish the desired result. Under that rule, in order for an appellee to avail himself of the fact that appellant has not filed his transcript within the time prescribed, he must file a motion to docket and dismiss before such transcript is actually filed; if appellee waits until the transcript is filed, even though it be filed after the time prescribed, a motion to dismiss on this ground comes too late. This tends to insure diligence on the part of an appellee, and to expedite the determination of appeals.

We are convinced that notwithstanding the decisions of this court in the past to the contrary, we should adopt the rule followed by the federal courts, and the same shall hereafter be regarded as the rule of practice on this point. The motion to dismiss in this case is accordingly denied.

Jennie T. Davis, a resident of the District of Columbia, died on September 14th, 1934, leaving a last will and testament dated June 4th, 1928, with a codicil attached thereto dated March 31st, 1934. The will was admitted to probate and record January 9th, 1935. The executor named therein having renounced, appellee Mildred Saunders was appointed administratrix c. t. a.

It appears that the testatrix died owning real estate in the District of Columbia assessed at $5,451; three farms in Pennsylvania valued in the petition for probate at $13,800; ten shares of American Telegraph & Telephone stock worth $1,100; personal effects, appraised at $600; and $100 cash. Debts totaled approximately $3,700.

At the time of the institution of the present suit the administratrix had sold the personal effects, appraised at $1,037.50, for approximately $1,200, and had applied this sum to the payment of debts against the estate, except the sum of approximately $585; which she still held unexpended. In her petition in the court below she alleged that the debts exceeded the balance on hand, and the American Telegraph & Telephone stock is the only personalty left belonging to the estate. Of the ten shares, four are pledged as collateral on a $200 note of the testatrix, which is still unpaid. The administratrix asked authorization to sell the ten shares, pay off the $200 note, and apply the balance —approximately $1,400—to the payment of debts and expenses.

Appellant, Bertha B. Vogel, contested the authority of the administratrix to sell the American Telegraph & Telephone stock and to apply the proceeds to the payment of the debts against the estate, for the reason that she was, by the terms of the will, specifically given "fourteen shares of American Telegraph and Telephone stock." From an order of the court below directing the sale of the ten shares of stock, and the application of the proceeds thereof to the payment of debts of the estate, this appeal was taken.

The third paragraph of the will reads as follows: "I bequeath to my friend Bertha B. Vogel, of the District of Columbia, fourteen shares of American Telegraph and Telephone stock, provided she survives me." The principal question is whether or not this constitutes a specific legacy. It is contended by appellee, and it was held by the court below, that it is a general legacy.

The primary subject of consideration is the intent of the testatrix with reference to this legacy, as it appears from the four corners of the will. Douglass v. Douglass, 13 App.D.C. 21, 28. While it appears to be true that the courts will usually lean toward construing a legacy as general, rather than specific (Kenaday v. Sinnott, 179 U.S. 606, 618 et seq., 21 S.Ct. 233, 238, 45 L.Ed. 339), yet if it clearly appears that the testator's intention is that the legacy shall be specific, such intention must be given effect.

An examination of the will, and especially of the codicil thereto, clearly indicates that appellant was the chief object of the bounty of the testatrix. We think that the will evinces a clear intention on the part of the testatrix to make special provision for the maintenance and comfort of the appellant. In item 4 appellant is given a life annuity, payable quarterly; in item 8 she is given one-eighth of the residue; in the codicil she is further provided for by a life estate in testatrix' farm known as "Londonderry Place." Appellant is referred to in the will as "my friend" and in the codicil as "my dear friend and companion." In addition to the foregoing, appellant is given fourteen shares of American Telegraph & Telephone stock by item 3, here involved.

The reason for the rule above mentioned, that the courts are generally averse to construing legacies to be specific, is stated in Kenaday v. Sinnott, supra, in a quotation from Tifft v. Porter, 8 N.Y. 516, as follows: "The inclination of the courts to hold legacies to be general, rather than specific, and one which the rule is based that to make) a legacy specific, its terms must clearly require such a construction, rests upon solid grounds. The presumption is stronger that a testator intends some benefit to a legatee, than that he intends a benefit only upon the collateral condition that he shall remain till death, owner of the property bequeathed. The motives which ordinarily determine men in selecting legatees, are feelings of regard, and the presumption of course is that their feelings continue and they are looked upon as likely to continue. An intention of benefit being once expressed, to make its taking effect turn upon the contingency of the condition of the testator's property being unchanged, instead of upon the continuance of the same feelings which in the first instance prompted the selection of the legatee, requires, as it ought, clear language to convey that intention."

The reason for applying the rule is absent in this instance. Here provision for appellant does not depend solely upon the legacy of fourteen shares of American Telegraph & Telephone stock. Appellant is well provided for during her lifetime by the annuity and the life estate in "Londonderry Place." Suppose appellant had been bequeathed only fourteen shares of American Telegraph & Telephone stock under the will, and it was found upon the death of the testator that she owned no American Telegraph & Telephone stock at all. In that case the courts would be loathe to construe the legacy as specific, and hold that it had been adeemed. But that situation does not exist here. Testatrix made careful and generous provision for appellant, exclusive of the legacy in question. We think that it was testatrix' intention that appellant should, in addition, have, specifically, fourteen shares of American Telegraph & Telephone stock owned by her at the time of her death, or such part of that number of shares as testatrix had not disposed of during her lifetime.

We think the bequest in question meets the requirements of a specific legacy. First, the property bequeathed is separated and distinguished from the other property of the testatrix. Indeed, it appears that the testatrix owned no stock other than American Telegraph & Telephone stock. Second, the testatrix at her death owned ten shares of the stock bequeathed.

Appellee urges that the absence of such words as "my stock" or "the stock now owned by me" indicates that testatrix did not intend to bequeath these shares specifically. The lack of such words is not conclusive. In Baker v. Baker, 319 Ill. 320, 150 N.E. 284, 286, 42 A.L.R. 1514, 1518, the Supreme Court of Illinois said: "It is immaterial whether the property given is described as being part of the testator's estate at the time of making the will, but to be a specific legacy it is essential that the property be owned by the testator at the time of his death, and that it be so described that it can be distinguished from the rest of his estate."

Appellee takes the position that this is a general legacy. Let us suppose that the testatrix had owned no American Telegraph & Telephone stock at all at the time of her

death. If appellee's contention as to the nature of the legacy be correct, it must have been testatrix' intention that in such case, notwithstanding the other adequate provisions for appellant in the will, the executor was to go into the market and purchase fourteen shares of this stock at the then market price, although the value of the stock may have increased greatly since the execution of the will and although such purchase might exhaust the residue and defeat the residuary legacies. Obviously, the testatrix had no such intention. We think it clear that she intended a specific legacy of fourteen shares.

It does not appear precisely how many shares of American Telegraph & Telephone stock, if any, were owned by testatrix when the will was executed. All that definitely appears is that upon her death she owned ten shares of this stock, four of which had been put up as collateral on a loan. It is clear to us that the testatrix, in making this will, was disposing of all her property, and it would seem to be a fair assumption that at the time the will was executed she owned at least fourteen shares of American Telegraph & Telephone stock. Only ten shares being owned by her at the time of her death, the legacy was adeemed to the extent of four shares.

While we have carefully considered the numerous cases relied upon by appellee, we do not deem it necessary to discuss them, since the nature of a legacy must ultimately be determined by the intent of the testator, as gathered from the whole will, and in view of the intent of the testatrix in the instant case we have determined this legacy to be specific.

Coming to the question of the liability of the specific bequest for the payment of the debts, we find that testatrix, in item 6 of the will, provided as follows: "All the rest residue and remainder of my estate of whatsoever kind and wheresoever located of which I may die seized and possessed or to which I may be entitled at my death, shall be divided into eight equal parts; and, in that event, I bequeath a one-eighth thereof to each of the following:" Bertha B. Vogel, the appellant herein, is the fourth of eight legatees named in this paragraph.

It is clear from the record that there is sufficient in the residue of the estate to more than pay all the debts and charges.

General legacies and residuary legacies abate before specific legacies. The general rule for the application of assets of a decedent to the payment of debts is stated in Adams Equity, 8th Ed., p. 262, as follows: "The prima facie order of application is as follows: 1. Personal estate not specifically bequeathed; 2. Real estate devised for payment of debts; 3. Real estate descended; 4. Personal and real estate specifically bequeathed or devised, subject to a charge of debts by will; 5. Personal and real estate specifically bequeathed or devised, subject to a charge of debts by mortgage, to the extent of such mortgage; 6. Personal and real estate specifically given, and not charged with debts."

Appellee insists that the personalty of a decedent must be exhausted to pay debts, before the realty may be looked to. As a general proposition, with reference to the estates of intestates, this is true. However, it is settled law that where bequests are made antecedently to the residuary clause, and no express trust is created to pay them, and the residuary clause blends realty and personalty together into one fund, both the realty and personalty so embraced in the residuary clause are chargeable with the payment of the debts and legacies. In Lewis v. Darling, 16 How. 1, 10, 14 L.Ed. 819, the Supreme Court said: "The rule in such a case is, that where a testator gives several legacies, and then, without creating an express trust to pay them makes a general residuary disposition of the whole estate, blending the realty and personalty together in one fund, the real estate will be charged with legacies, for in such a case, the 'residue' can only mean what remains after satisfying the previous gifts. Hill on Trustees, 508. Such is the settled law both in England and in the United States, though cases do not often occur for its application. Where one does occur, a legatee may sue to recover the legacy, without distinguishing in his bill the estate into the two kinds of realty and personalty, because it is the manifest intention of the testator that both should be charged with the payment of the money legacies. Nor does this conflict at all with that principle of equity jurisprudence, declaring that generally, the personal estate of the testator is the first fund for the payment of debts and legacies."

And in Baker v. Baker, supra, the Supreme Court of Illinois said:

"The general rule is that the personal property constitutes the natural and primary fund for the payment of the expenses of

administration and the debts of the estate, but it is also well established that when the intention of the testator to charge his real estate with the payment of such obligations is clear, either from the express words of the will or by necessary implication from the language used, debts and other claims will be held to be a charge upon the real estate. If a man dies intestate owing debts, payment will be made in the regular order pointed out by the statute, commencing with the personalty; but if he dies testate and devises and bequeaths his whole property specifically, both real and personal, it is an indication that the recipients of his bounty shall have the estate in the proportion designated in the will. Where, therefore, the testator makes various specific gifts of property, and large amounts of debt, which perhaps were not contemplated, are proven against his estate, it is not reasonable to assume that it was intended by him that the real estate should be entirely exonerated from his debts by the personal property. The reasonable construction to give the will is one that will carry out the plan of the testator in the distribution of his property as nearly as possible, so that there will be no disappointment to those who were given personal property, when from the will it appears that they were, equally with those who received devises of real estate, the subjects of the testator's bounty."

█ It follows that the legacy here involved cannot be subjected to the payment of debts until the residue of the estate has been exhausted. In Nash v. Ober, 2 App. D.C. 304, 308, Mr. Justice Shepard, speaking for the court, said: "Specific legacies are not liable to abatement with general legacies, nor subject to contribution with them to pay debts. Necessarily, then, the residuary bequest must always be exhausted before the specific legacies can be called on to contribute to the payment of debts. Though called a residuary legacy generally, it can hardly be called a legacy in the ordinary sense of the term; for the words 'rest' and 'residue' can only apply to that which remains after the payment of debts, legacies proper and legal charges."

We have no difficulty in reaching the conclusion that the legacy in question is a specific one; that the debts must be paid from the residue, which is ample for the purpose; and that appellant is entitled to the ten shares of American Telegraph & Telephone stock, together with whatever

dividends have accrued thereon since the death of the testatrix.

The order of the lower court for the sale of these shares is accordingly reversed, with costs.

STEPHENS, Associate Justice.

I dissent. I understand the facts to be these: Some six years prior to her death in 1934, Jennie T. Davis executed a will, and later a codicil. So far as here pertinent the will provided:

"I bequeath to my friend Bertha B. Vogel, of the District of Columbia, fourteen shares of American Telegraph and Telephone stock, provided she survives me."

The will also gave Bertha B. Vogel an annuity and an eighth of the residue; the codicil gave her a life estate in certain realty. At the time of her death Jennie T. Davis owned ten shares of American Telegraph and Telephone stock, four of which were in pledge. As to whether at the time of the execution of the will she owned any of such stock the record is silent. Upon these facts the majority concludes that the legacy of the fourteen shares of stock was specific rather than general—adeemed as to four shares—and not, therefore, subject to be sold to pay debts.

I think this conclusion is wrong and the reasons given for reaching it untenable. Under the most elementary rules the legacy was, in my opinion, general.

"A specific legacy is a gift of a specific thing, or of some particular portion of the testator's estate, which is so described by the testator's will as to distinguish it from other articles of the same general nature. A specific legacy differs from a general legacy in that it is not intended by testator to be paid out of his estate generally, but is to be paid solely by delivering to the beneficiary the specific thing given by will, as distinguished from a designated value, quantity, and the like. The use of the word 'my' or some other expression which indicates ownership, tends to show that the legacy is specific. A specific legacy is given by words which describe and identify the specific property which testator gives to the beneficiary. . . ." 2 Page on Wills (2d Ed.) § 1227. As said in First National Bank of Boston v. Charlton, 281 Mass. 72, 76, 183 N.E. 250, 251:

"the essential thing in making the gift other than general: [is] A specification by the testator of property then his or contemplat-

ed to become subject to the will which can be identified when he comes to die."

Where stocks, bonds, or other securities, up to a given value or in a given number, are the subject of testamentary gift it is frequently difficult to determine whether the gift is general or specific. Which it is depends upon the intent of the testator, the cardinal rule of testamentary construction being to ascertain such intent and give it effect. Where the language of the testator is lacking in clarity the circumstances under which the will was written may be consulted to explain or make certain what the testator has written. Blake v. Hawkins, 98 U.S. 315, 324, 25 L.Ed. 139. In determining the intention of the testator in respect of legacies, the law inclines to hold them general rather than specific. This is the rule in this jurisdiction. Kenaday v. Sinnott, 179 U.S. 606, 21 S.Ct. 233, 45 L.Ed. 339; Douglass v. Douglass, 13 App.D.C. 21. In the former case Mr. Chief Justice Fuller, speaking for the Court, and quoting from Tifft v. Porter, 8 N.Y. 516, said:

"The inclination of the courts to hold legacies to be general, rather than specific, and on which the rule is based that to make a legacy specific, its terms must clearly require such a construction, rests upon solid grounds. The presumption is stronger that a testator intends some benefit to a legatee, than that he intends a benefit only upon the collateral condition that he shall remain till death, owner of the property bequeathed. The motives which ordinarily determine men in selecting legatees, are their feelings of regard, and the presumption of course is that their feelings continue and they are looked upon as likely to continue. An intention of benefit being once expressed, to make its taking effect turn upon the contingency of the condition of the testator's property being unchanged, instead of upon the continuance of the same feelings which in the first instance prompted the selection of the legatee, requires, as it ought, clear language to convey that intention." 179 U.S. 606, at page 619, 21 S.Ct. 233, 45 L.Ed. 339.

In Douglass v. Douglass, supra, this court said:

"It may also be admitted that the leaning of the English decisions, followed generally in this country, has been towards a construction that would declare a legacy general rather than specific. The earlier cases, especially, indicate the rule to be to hold every legacy to be general, unless an intent to the contrary be either expressly shown in the words of the particular bequest, or made clearly to appear from the whole of the will." 13 App.D.C. 21, at page 28.

There are innumerable decisions elsewhere establishing and applying this rule of construction. I am unable to find any to the contrary. For a collection of the cases, see 11 L.R.A.(N.S.) 49, 66–67. And see the cases collected in the notes to Section 267 of 28 Ruling Case Law, p 293. The rule has been applied almost without exception by courts dealing with wills disposing of stated quantities of shares of stock or of bonds. Indeed, it is obvious that it is in such situations that the application of the rule is most likely to be called for, because it is in case of such gifts that questions arise upon the face of the will as to the intent of the testator— that is, as to whether he intended the gift to be specific or general. Tifft v. Porter, supra, and Robinson v. Addison, 2 Beav. 515, referred to in another connection below, are cases applying the rule to legacies of stated quantities of securities.

Intent that the legacy in the instant case be specific is neither "expressly shown in the words of the particular bequest, [n] or made clearly to appear from the whole of the will." I concede that the mere absence of possessive words in the legacy itself such as "my stock" or "stock owned by me" is not conclusive. In re Ferreck's Estate, 241 Pa. 340, 88 A. 505; Sherman v. Riley, 43 R.I. 202, 110 A. 629. But there is nothing in this will which describes and identifies the stock in such manner "as to distinguish it from other articles of the same general nature" or as to indicate that the testatrix intended that specific shares should be delivered to the beneficiary—that no other shares could satisfy the bequest. There is no "specification by the testator of property then his or contemplated to become subject to the will which can be identified when he comes to die." The extrinsic circumstances of ownership at the time of death of ten shares, four pledged, is not controlling. See Capron v. Capron, 17 D.C.(6 Mackey) 340, 346. In Tifft v. Porter, supra, a testator left 240 shares of certain stock to his wife and made a gift to another of 120 shares of the same stock. At the time of his death he owned exactly 360 shares. These legacies were nevertheless held to be general. To the same effect is Dryden v. Owings, 49 Md. 356. Indeed, in most of the cases where the question arises as to whether a gift of

stock is specific or general, there is some stock in the estate at the time of the testator's death.

There being nothing in the will and nothing in the extrinsic circumstances to indicate clearly that it was intended by the testatrix that the gift be specific the general rule in favor of general legacies should be applied.

The majority recognizes the rule requiring a legacy to be treated as general unless a contrary intent is clearly shown, but refuses to give effect to it for the reason that other provision is made in the will for the legatee. Bertha B. Vogel is the chief object of bounty in the will. She is referred to therein as "my friend" and in the codicil as "my dear friend and companion," and, as stated above, is given, by the will and codicil together, in addition to the legacy, an annuity, an eighth of the residue, and a life estate in realty. Because the testatrix thus felt especially generous towards this legatee the rule intended to increase the chance of benefit under a will is held by the majority not to apply. An exactly opposite result would seem more sensible. That is to say, a rule which operates to insure benefit, and which rests on a basis of presumed continued good feeling toward a legatee, should be particularly applicable in favor of the person apparently most beloved by the maker of the will. The rule to hold legacies general rather than specific, unless clearly the latter, is uniformly applied in the cases notwithstanding that there are other gifts to the same legatee. See the cases cited in the notes to 2 Page on Wills (2d Ed.) § 1225, pp. 2036–2037.

In addition to refusing to apply a general rule of construction, the majority indulges an assumption of fact—the assumption that the testatrix owned at least fourteen shares of American Telegraph and Telephone stock at the time of the execution of the will. There is nothing whatever in the record to the effect that she ever owned fourteen shares. All that the record shows is that she had ten at death. Such an assumption of fact was rejected in Re Low's Estate, 103 N.J.Eq. 435, 143 A. 222. There the will read:

"I give and bequeath to my sister-in-law, Ida Grant, thirty (30) shares of the capital stock of the First National Bank of Toms River, New Jersey."

A similar clause gave ten shares of the same stock to another legatee. The court held these legacies to be general, saying:

"There is no reference . . . by which the stock thus bequeathed is earmarked or can be determined to be stock in that bank then owned by the testator. . . . Proctors for both appellant and respondents, in arguing this question, discuss the fact, among others, of the connection of the deceased, as an officer, with the First National Bank of Toms River. The respondents advance that fact, and others, as a reason for concluding that these legacies are of stock owned by the testator on the date of his will; but the answer to that argument is that those facts do not appear anywhere in the record which is before me. *There is nothing whatever in the record to indicate what or how much stock of this or any other kind was owned by the testator at the date of the will, and it is on the record alone that this decision must be based.*" [Italics supplied] 103 N.J.Eq. 435, at pages 440, 441, 143 A. 222, at page 224.

The majority cites no case supporting the making of an assumption that a testator had at the time of the execution of the will property of the kind and in the amount mentioned in the will, where the issue before the court is whether a legacy is specific or general, and where under the facts the testator at the time of death had a smaller amount of the property than the legacy mentioned. The only case which seems to support such an assumption is distinguishable. In Smith v. Smith, 192 N.C. 687, 135 S.E. 855, the will read:

"5th. I will and direct that all my property shall remain as it is now under the direction of my wife, Frances E. Nesbit, so long as she shall live, and after her death, my property shall be distributed as provided in the items following: . . .

* * *

"10th. I bequeath unto Nannie Lee Kerr Nesbit twenty shares of the capital stock of the Mooresville Cotton Mills, Mooresville, N. C."

Then followed four legacies to others of ten shares each of the same stock. At the time of the testator's death he owned sixty shares, the exact amount of the total of the five legacies. The court ruled that actual ownership of the property at the time of the execution of the will was an essential to a legacy's being specific and found that the reference to "my property" in the 5th item was a sufficient indication that the testator owned the sixty shares at the time of the execution of the will and that he was in

possession thereof. But the use of possessive words, and the exact coincidence between the number of shares given and the number owned at death, clearly differentiates the case.

Even if the assumption were permissible that the testatrix in the present case owned fourteen shares of American Telegraph and Telephone stock at the time of the execution of the will, the conclusion of the majority that this would make the legacy specific is, in my view, erroneous. In Robinson v. Addison, supra, there was a legacy of "five and a half shares in the Leeds and Liverpool canal, and all benefit and advantage thereof," and there were two other legacies of five shares each in the same company. At the time of the execution of the will the testator owned exactly fifteen and a half shares. Nevertheless the English court held the legacies general, not specific. The court said:

"In the gift the testator has used no words of description or reference, by which it appears that he meant to give the specific and particular shares which he then had.

"Various arguments depending on the general scope and effect of the will, were used for the purpose of shewing that the testator, in giving the precise number of shares which he possessed, must have had those shares in his contemplation and none other, and consequently must have meant specific gifts of them; . . .

\* \* \*

"It is, however, clear that the testator, if he had meant to give only the shares which he had, might have designated them as 'his,'—that *the mere circumstance of the testator having, at the date of his will, a particular property, of equal amount to the bequests of the like property which he has given without designating it as the same, is not a ground upon which the Court can conclude that the legacies are specific; . . .*" [Italics supplied] 2 Beav. 515, at pages 519, 520.

In Re Low's Estate, supra, after rejecting, as above pointed out, an assumption that the stock referred to in the will was owned by the testator at the time of execution of the will, the court said:

"But even though these facts were available for consideration they would not, standing alone, control. The intention to make the gift specific must be found in the will itself." 103 N.J.Eq. 435, at page 441, 143 A. 222, at page 224.

The overwhelming weight of authority is that ownership at the time of the execution of the will of the exact number of securities given is not sufficient to make a legacy specific. See the cases collected in 2 Page on Wills (2d Ed.) § 1229, n. 2. See, also, Note, 11 L.R.A.(N.S.) 49, 74–79. General references are given because the cases are many in number and the rule practically uniform. In Douglass v. Douglass, supra, this court said:

"Without, therefore, reviewing the many well considered cases relied on by the appellant, . . . it may be conceded that they establish the doctrine that a bequest generally of certain bonds and stocks, without further explanation and without more particularly referring to and marking the corpus of the identical bonds and stocks, does not amount to a specific legacy, *even though, at the time of the execution of the will, the testator may, in fact, have been possessed of bonds and stocks of that description, to an equal amount or more.*

"*This doctrine was fully recognized in Maryland . . .; and has been maintained in the District of Columbia.*" [Italics supplied] 13 App.D.C. 21, at page 27.

A search of the cases indicates that only Missouri and New Hampshire are opposed to this rule. See Waters v. Hatch, 181 Mo. 262, 79 S.W. 916; Drake v. True, 72 N.H. 322, 56 A. 749.

The absence of the fact assumed by the majority is, by the very nature of a specific legacy, conclusive against the legacy's being specific. See Capron v. Capron, loc. cit., supra; Slade v. Talbot, 182 Mass. 256, 259, 65 N.E. 374, 94 Am.St.Rep. 653. That is to say, if the testatrix was not in the will specifying property then hers, which could be identified when she came to die, then by no possibility could the legacy be specific—unless within First National Bank of Boston v. Charlton, supra, she was specifying property contemplated to become subject to the will, and of this there is no suggestion in the case.

The majority I think makes a further error in relying upon a proposition to the effect that if the testatrix had owned no American Telegraph and Telephone stock at death, and if the estate were insufficient to benefit the residuary legatees largely, the testatrix would not have intended the reduction of general assets to purchase shares for a specific legatee. This is sheer speculation from a hypothetical case. No proper argu-

ment for the construction of a will can be rested upon supposed post mortem situations and a testator's supposedly probable reaction thereto had' he considered them. It is of interest to note in respect of the hypothesis that the testatrix would not have intended the reduction of general assets to purchase shares for a specific legacy, that the actual result of the majority decision is to submit for sale for debt the portions of the residuary legatees before the portion of Bertha B. Vogel.

I am authorized to state that Mr. Justice GRONER, joins in this opinion.